IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMERICA CAN! and AMERICA CAN! CARS FOR KIDS, | § § § | |
| Plaintiffs, | § § | Civil Action No. 3:20-CV-0850-X-BH |
| v. | § § | |
| ARCH INSURANCE COMPANY and CARE PROVIDERS INSURANCE SERVICES LLC, | § § § § | |
| Defendants. | § | Referred to U.S. Magistrate Judge[1] |

## MEMORANDUM OPINION AND ORDER

Before the Court is *Plaintiffs' Motion to Exclude Testimony of Christopher Martin*, filed October 28, 2021 (doc. 104). Based upon the relevant filings, evidence, and applicable law, the motion to exclude is **DENIED**.

### I.  BACKGROUND

This is an insurance coverage dispute between American Can! (Insured) and America Can! Cars for Kids (ACCK) (collectively Plaintiffs), and Arch Insurance Company (Insurer) and Care Providers Insurance Services LLC (Broker) (collectively Defendants), involving attorneys' fees and expenses incurred by Insured while defending a trademark infringement case. (*See* doc. 52.) Broker sold Plaintiffs commercial general liability policies issued by Insurer which provided, in relevant part, that Insurer has "a duty to defend the insured against any 'suit' seeking those damages [described herein]." (*Id.* at 2-4.)[2] In December 2014, Insured was sued by Kars 4 Kids in New Jersey federal court for trademark infringement, where it asserted various defenses as well as a

---

[1] By *Order of Reference* filed November 9, 2020 (doc. 40), this case has been referred for full case management.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

counterclaim seeking to establish prior use of its trademark. (*Id.*) In April 2015, Insurer agreed to "defend" Insured in the lawsuit. (*Id.*) The lawsuit went to trial in May 2019, and the jury found in favor of Insured on its defense and counterclaim. (*Id.*) Several months later, the New Jersey court entered a judgment awarding Insured monetary damages and injunctive relief, but denied its requests for attorneys' fees and enhanced damages. (*Id.* at 4-5.)

Plaintiffs allege that the fees and expenses incurred and paid by them in connection with the lawsuit exceeded $4 million, but Defendants "only reimbursed [them] a fraction of this amount." (*Id.* at 5.) They allege that they promptly communicated with Defendants and their claims processing agents and provided supporting documentation for the fees and expenses, but Defendants refused to fully reimburse them even though the fees and expenses are covered by the insurance policies. (*Id.* at 6-7.)

On March 12, 2020, Plaintiffs filed this action against Defendants in state court. (doc. 1-4.) After the state case was removed to this court, Plaintiffs filed an amended complaint on December 18, 2020. (docs. 51, 52.) It asserts claims against Defendants for negligence, gross negligence, negligent misrepresentation, breach of contract, breach of duty of the good faith and fair dealing, and violations of the Texas Insurance Code and the Deceptive Trade Practices Act, and it seeks actual, exemplary, and punitive damages, declaratory relief, attorneys' fees and expenses, and prejudgment and post judgment interest. (doc. 52 at 7-17.)

Defendants designated Christopher Martin, an attorney with experience in insurance, as one of their experts, and provided his expert report. (*See* doc. 104 at 16-33.)  According to his report, he was retained "as a rebuttal expert to comment and opine on the expert opinions of [Plaintiffs' experts]." (*Id.* at 17.)  He is expected to testify on "issues pertaining to Plaintiffs' claims for

improper claims handling, agency issues and reimbursement of attorney's fees and expenses arising out of the underlying civil action in New Jersey." (*Id.* at 16.)

On October 28, 2021, Plaintiffs moved to exclude Mr. Martin's expert testimony under Rules 403 and 702 of the Federal Rules of Evidence. (doc. 104.) Defendants responded on November 18, 2021, and Plaintiffs replied on November 23, 2021. (*See* docs. 110, 111.)

## II. FEDERAL RULE OF EVIDENCE 702

Plaintiffs seek to exclude Mr. Martin's expert testimony under Rule 702 on grounds that he is not qualified and his opinions are not reliable. (*See* doc. 104 at 3-12.)

Rule 702 governs the admissibility of expert testimony and provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based upon sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Under this rule, the main issue is whether a particular expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (citations omitted). A court has discretion to keep an expert witness from testifying if it finds that the witness is not qualified to testify in a particular field or on a given subject. *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). The key factors in evaluating expert testimony are relevance and reliability. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

3

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See Id.* at 592 n.10. The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and the testimony is relevant and reliable. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citation omitted). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) ("Although the *Daubert* analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does not judge the expert's conclusions themselves.").

**A.     Qualifications**

Plaintiffs argue that Mr. Martin lacks the qualifications to provide opinions on the reasonableness and necessity of attorneys' fees and expenses in the trademark lawsuit because he has no experience "trying intellectual property cases" and no experience "trying cases in New Jersey." (doc. 104 at 3-4.)  They also argue that he should be excluded from providing "insurance industry testimony regarding the actual practices of insurers and insureds" because he does not have "industry experience actually handling or processing claims." (*Id.* at 4.)

4

Before allowing expert testimony to be heard, a district court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Fed. R. Evid. 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). "The standard for qualifying expert witnesses is fairly liberal; the witness need not have specialized expertise in the area directly pertinent to the issue in question if the witness has qualifications in the general field related to the subject matter in question." *Guzman v. Mem'l Hermann Hosp. Sys.*, No. CIV.A. H-07-3973, 2008 WL 5273713, at *15 (S.D. Tex. Dec. 17, 2008). "Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 455 (5th Cir. 2009). The inquiry is whether a particular expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues." *Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999) (quoting *Kumho*, 526 U.S. at 156). The court has wide discretion in determining whether an expert is qualified. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997).

Mr. Martin is an attorney who has represented parties in civil suits involving insurance claims and coverage disputes in state and federal courts across Texas and other jurisdictions for over 30 years. (doc. 110-1 at 73–74.) He is board certified in Consumer Law, the specialization covering Insurance Law, by the Texas Board of Legal Specialization. (*Id.* at 74.) He has experience in insurance disputes involving coverage issues and operational claim decisions arising out of a wide variety of intellectual property (IP) cases, and has provided guidance to liability carriers "on a wide range of issues including determining whether a duty to defend was owed, the selection of defense

5

counsel, the monitoring of defense counsel, the review of defense counsel's fee bills and expenses submitted for reimbursement, policy limit demands, settlement negotiations, indemnity valuation issues, indemnity coverage issues, and independent counsel questions." (doc. 104 at 18.) He is the former Editor-in-Chief of *The Journal of Texas Insurance Law*, and has authored several books and treatises and written numerous periodicals and articles on insurance coverage and bad faith issues. (doc. 110-1 at 74-81.)  He has been an adjunct professor teaching insurance law at the University of Houston Law Center for fourteen years, and has taught and provided training to lawyers and insurance professionals on insurance coverage issues and insurance litigation strategy techniques. (doc. 110-1 at 73.) He has provided expert testimony on insurance industry standards, practices, and customs in several cases since 1996. (*Id.* at 82-93.)

   As a lawyer with over 30 years experience in insurance law who has defended insurance companies in insurance coverage and bad faith lawsuits in Texas courts and other jurisdictions and has taught and written on the topics of insurance coverage and bad faith claims, Mr. Martin is qualified to offer opinions regarding the handling of Plaintiffs' insurance claim and the reasonableness and necessity of the fees and expenses incurred in the trademark lawsuit.  *See Huval v. Offshore Pipelines, Inc.*, 86 F.3d 454, 458 (5th Cir. 1996); *see, e.g., Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, No. CIV.A. 02-2116, 2006 WL 1437169, at *3 (W.D. Pa. Jan. 19, 2006) (finding expert's "knowledge, experience, and education gained over twenty-five years spent studying insurance, the property and casualty insurance industry, the regulation of insurance, and insurance practices, among other things, more than qualify him to serve as an expert on issues such as the fundamental principles of insurance, the operation of the insurance industry, and the reasonableness of [plaintiff's] claims handling procedures").  Although he does not specialize in IP

law and does not practice in New Jersey, he has substantial experience in "coverage disputes arising out of IP cases in Texas and other jurisdictions related to defense and indemnity benefits under commercial liability policies for which claims were made by insured defendants being sued in various types of IP cases." (*See* doc. 104 at 18); *see also Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) ("[T]he fair and reasonable compensation for the professional services of a lawyer can certainly be ascertained by the opinion of members of the bar who have become familiar through experience and practice with the character of such services."). Plaintiffs' challenges to Mr. Martin's expertise on IP issues and New Jersey courts go to the weight afforded to his testimony, not its admissibility. *See Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018) (recognizing that "[a] witness qualified as an expert is not strictly confined to his area or practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion") (quotations and citations omitted)); *see, e.g., Centralian Controls PTY, Ltd. v. Maverick Int'l, Ltd.*, No. 1:16-CV-37, 2018 WL 1602948, at *5 (E.D. Tex. Feb. 9, 2018) ("The fact that Patterson is rendering an opinion on the reasonableness of a settlement in a jurisdiction in which he is unlicensed and perhaps unfamiliar will be ample fodder for Maverick during cross-examination. However, it is not fatal to his qualifications to rendering an opinion about the 'fairness' of settlement—just as an attorney licensed in one state may be qualified to practice law in another state in which she is not licensed."). Plaintiffs' motion to exclude Mr. Martin on qualification grounds is **DENIED**.

B.  **Reliability**

   1.  *Legal Conclusions*

Plaintiffs argue that Mr. Martin should be excluded from testifying because he provides only

7

legal opinions, and they identify 25 "conclusions" from his report that "demonstrate the biased, legal and conclusory nature of his opinions." (doc. 104 at 5-9.) Defendants respond that many of the excerpts Plaintiffs cite are in direct rebuttal to their experts' opinions, and that his conclusions are permissibly based on mixed questions of law and fact. (doc. 110 at 10-11.)

The Federal Rules of Evidence provide that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. While experts may offer their opinions on ultimate issues, they "may never render conclusions of law." *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009). This is because "our legal system reserves to the trial judge the role of deciding the law for the benefit of the jury." *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997). "[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). Ultimately, the expert must "bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). "'[T]he task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one,' but one that requires courts to exclude questions or answers from experts that 'would supply the jury with no information other than the expert's view of how its verdict should read.'" *Thomas v. W&T Offshore, Inc.*, No. CV 16-14694, 2018 WL 4223589, at *7 (E.D. La. Aug. 27, 2018) (quoting *Owen*, 698 F.3d at 240).

Defendants retained and designated Mr. Martin as their rebuttal expert on the handling of Plaintiffs' insurance claim, including their request for reimbursement of defense costs. (doc. 104 at 16-33.) His report contains opinions and conclusions rebutting the opinions of Plaintiffs' experts on, among other things, the reasonableness and necessity of attorneys' fees and expenses in the

8

trademark lawsuit, the obligations of an insurance agent, the standards for proper claims settlement practices, and the duty of good faith and fair dealing. (doc. 110 at 5.)  At his deposition, Mr. Martin explained that he was providing expert testimony regarding the issue of attorneys' and the issue of insurance claims handling, and not his legal interpretations of Texas case law, insurance statutes, or insurance policies. (doc. 110-1 at 5.)

As discussed, Plaintiffs identify 25 examples of impermissible legal conclusions in Mr. Martin's report, and argue that he should be excluded from providing expert testimony to the jury. (doc. 104 at 5-9.)  Even assuming for purposes of this motion only that all 25 statements are legal conclusions, a blanket exclusion of Mr. Martin's testimony would not be warranted at this time. Courts have found that the presence of impermissible legal conclusions in an expert's report is not a sufficient basis to strike the entirety of his testimony, particularly where, as here, his report "provides additional, potentially admissible opinion[s]." *Novedea Systems, Inc. v. Colaberry, Inc.*, No. 6:20-CV-180-JDK, 2021 WL 6618488, at *2 (E.D. Tex. Nov. 8, 2021) (J. Kernodle); *see also Alexander v. Martin*, No. 2:08-CV-400, 2010 WL 11530305, at *7 (E.D. Tex. June 24, 2010) (finding certain statements contained in expert reports may amount to inadmissible legal conclusions, but denying motions to exclude the experts and their opinions in their entirety); *Britt v. Mississippi Farm Bureau Cas. Ins. Co.*, No. 1:18-CV-38-GHD-DAS, 2022 WL 433323, at *4 (N.D. Miss. Feb. 11, 2022) (denying plaintiffs' motion to exclude the testimony of defendants' retained insurance expert for having legal conclusions in his expert report).  Mr. Martin explains throughout his report that his opinions are based on the customs and practices of the insurance industry. (*See* doc. 104 at 16-33.)  "Qualified experts are permitted to offer opinion testimony as to industry standards or norms and whether or not they were followed in a particular case, as long as

9

such opinions involve questions of fact rather than purely legal matters." *Flanagan v. City of Dallas*, No. 3:13-CV-4231-M-BK, 2017 WL 2817424, at *1 (N.D. Tex. May 25, 2017) (citing *Waco Int'l, Inc. v. KHK Scaffolding Houston, Inc.*, 278 F.3d 523, 533 (5th Cir. 2002)). Courts routinely allow testimony from experts within the insurance industry to testify about the ordinary practices and usages of the industry, while specifically barring testimony that states a legal conclusion. *See Beneplace, Inc. v. Pitney Bowes, Inc.*, No. A-15-CV-65-LY-ML, 2016 WL 11582931, at *4 (W.D. Tex. Sept. 20, 2016) ("It is clear from Beck's report that much of his purported testimony relates to customs, standards, and practices in the insurance industry—topics which are appropriate for expert testimony. As it stands, Defendants ask the court to strike the entire report; such relief is much too broad to cure whatever specific issues may exist therein."); *Mears v. Jones*, No. 1:17-CV-6-KS-MTP, 2019 WL 3483157, at *1 (S.D. Miss. July 31, 2019) (citation omitted) ("Although parties are free to offer expert testimony as to the customs or standards in an industry or profession, no expert will be permitted to provide legal opinions or instructions of law masquerading as testimony about insurance industry practices or customs."); *see also Travelers Indem. Co. of Illinois v. Royal Oak Enterprises, Inc.*, No. 5:02-CV-58-OC-10GRJ, 2004 WL 3770571, at *2 (M.D. Fla. Aug. 20, 2004) ("[W]here, as here, the substance of the expert's testimony concerns ordinary practices and trade customs which are helpful to the fact-finder's evaluation of the parties' conduct against the standards of ordinary practice in the insurance industry, his passing reference to a legal principle or assumption in an effort to place his opinions in some sort of context will not justify the outright exclusion of the expert's report in its entirety."). Mr. Martin's opinions as to insurance industry customs and ordinary practices concerning the issues in dispute may be received to enable the jury to evaluate how Defendants' conduct measured up against such

10

standards. *See Am. Home Assur. Co. v. Cat Tech*, L.L.C., 717 F. Supp. 2d 672, 682 (S.D. Tex. 2010), *rev'd on other grounds by* 660 F.3d 216 (5th Cir. 2011) ("To the extent that Martin's testimony explains bears on claims handling and what generally constitutes bad faith within the insurance industry, it is admissible.").

Moreover, many of the examples of legal conclusions Plaintiffs reference from Mr. Martin's report rebut legal conclusions from their expert reports. *See Beneplace*, 2016 WL 11582931, at *4 (observing that in attempting to strike plaintiffs' expert for legal opinions in his report while also designating their own expert witness to testify on the same matters, defendants "appear to want to have their cake and eat it too"); *see generally Huawei Techs. Co. v. Yiren Huang*, No. 4:17-CV-00893, 2019 WL 2077821, at *11 (E.D. Tex. May 9, 2019) (finding that an expert should be permitted to offer opinions to rebut the opposing expert's legal standard and methodology). As one court in this circuit observed, "the line between permissible and impermissible lines of questioning can be difficult to draw, particularly without the context of live testimony at trial." *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. CV 13-0366, 2016 WL 8274173, at *8 (E.D. La. May 26, 2016). Because none of the parties' experts will be allowed to present their legal conclusions to the jury, and it cannot be determined at this time whether those opinions may actually be offered at trial, a wholesale exclusion of Mr. Martin's testimony on the basis that he may offer legal conclusions and opinions is premature. "These issues are therefore better addressed in a motion in limine or a contemporaneous objection at trial." *Novedea Systems*, 2021 WL 6618488, at *2.

### 2. *Methodology*

Plaintiffs argue that Mr. Martin's opinions are unreliable because they are based on unproven

11

assumptions and an unreliable methodology. (doc. 104 at 10.)

Reliability requires an assessment of "whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." *See Daubert*, 509 U.S. at 592-93. The Supreme Court has suggested that trial courts examine a nonexclusive list of factors, including whether a theory or technique has or can be tested, published, subjected to peer review, whether it has or can be subjected to standards controlling its operation, the known or potential rate of error, and whether it is generally accepted. *Id.* at 593-94. The reliability determination ensures that the expert testimony is "supported by appropriate validation." *Id.* at 590.

The factors which the Supreme Court has suggested trial courts consider in determining reliability may or may not be applicable, depending upon "the particular circumstances of the particular case at issue" including "the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150. When assessing the reliability of non-scientific testimony, courts consider other factors including whether the expert has sufficient personal knowledge, work experience, or training to support the opinions offered. *See* Fed. R. Evid. 702; *Kumho*, 526 U.S. at 150-51. "If the opinion is based solely or primarily on experience, the witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts." *See* Fed. R. Evid. 702, advisory committee's note, 2000 Amends.

Here, Mr. Martin provides expert opinions on whether the fees and expenses incurred in the trademark lawsuit were reasonable and necessary, whether Broker's agency status imposed any obligations, and whether Insurer properly investigated and handled the claim at issue. (doc. 104 at

12

16.) In his report, he articulates the factual basis for his opinion on each issue, including the factual reasons for his disagreement with the opinions of Plaintiffs' experts. (*Id.* at 16-17.) When forming his opinions, he applied his 30 years of experience and specialized knowledge of Texas insurance law to the facts derived from his review of 40,000 pages of documents, including the invoices, the policies, claim file materials, email communications, letter correspondence, and the filings in the trademark lawsuit. (*Id.* at 18.) At his deposition, he testified that the methodology used for determining what a reasonably prudent insurance carrier would do in the context of implementing a duty to defend is based on a standard of care developed in the insurance industry over the last 60 years, which is guided by state legislation, legal opinions, and national treatises and books on insurance law, and generally mirrors the National Association of Insurance Commissioners Model Code and the Texas Insurance Code. (doc. 110-1 at 8-9.)

      Mr. Martin's opinions are not so fundamentally unsupported that they would not assist the fact-finder in reaching an intelligent and sound verdict. Although Plaintiffs' claim that Mr. Martin's expert report is based on unexplained assumptions and conclusions, any perceived deficiencies with the methods and bases of his opinions go to the weight to be given to his testimony, not the admissibility, and may be raised through vigorous cross-examination at trial. *See Primrose Operating*, 382 F.3d at 562-63 (holding that questions relating to the bases and sources of an expert's opinion generally go to the weight of the opinion rather than its admissibility because it is "the role of the adversarial system, not the court, to highlight weak evidence"); *see also Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012) (noting that an expert's opinion will be excluded on this ground only when, for example, it is "completely unsupported," and "the opposing party must expose that lack of reliability").

### 3. *Inconsistency with Facts*

Plaintiffs argue that Mr. Martin "made up facts that supported his litigation-position and ignored all facts that demonstrated the falsity of those opinions." (doc. 104 at 11.) In particular, they claim that his opinions as to whether Defendants violated the Texas Insurance Code are contradicted by deposition testimony of Defendants' corporate representatives. (*Id.* at 11-12.)

As discussed, Defendants are not required to show that Mr. Martin's opinions are correct, but only that he is qualified and his testimony is relevant and reliable. *See Moore*, 151 F.3d at 276. It is the purview of the fact-finder to decide the accuracy of facts underlying an opinion. *See Pipitone*, 288 F.3d at 249-50. Plaintiffs' challenges go to the weight to be given to Mr. Martin's expert testimony and should instead be addressed by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

Because Defendants have met their burden to show that Mr. Martin's opinions are reliable, Plaintiffs' motion to exclude him on reliability grounds is **DENIED**.

### III. FEDERAL RULE OF EVIDENCE 403

Plaintiffs argues that Mr. Martin's testimony should be excluded under Rule 403 because his opinions would not be helpful to the jury and any probative value would be substantially outweighed by the prejudicial effect. (doc. 104 at 12-13.)

Rule 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly cumulative evidence." Fed. R. Evid. 403. "[T]o warrant exclusion, the danger of unfair prejudice—on this ground or any other—must *substantially* outweigh the probative value of the evidence." *United States v. Fields*, 483 F.3d 313, 354 (5th Cir.

14

2007) (emphasis original). "[T]he application of Rule 403 must be cautious and sparing." *Id.* "Rule 403 is not designed to 'even out' the weight of the evidence." *Baker v. Canadian Nat'l/Ill. Cent. R.R.*, 536 F.3d 357, 369 (5th Cir. 2008).

Here, Plaintiffs argue that Mr. Martin's opinions are not sufficiently tied to the facts of the case, and that his testimony is within the common knowledge of the jury and would be of no assistance.(doc. 104 at 13.) As discussed, his expert opinions are factually supported and are relevant to the causes of action asserted against Defendants. Courts have found expert testimony on insurance standards and claims handling beneficial to the jury. *See Cat Tech*, 717 F. Supp. 2d at 682; *Beneplace*, 2016 WL 11582931, at *4; *Mears*, 2019 WL 3483157, at *1. His testimony is highly probative and not substantially outweighed by any of the dangers identified in Rule 403. Plaintiffs' motion to exclude Mr. Martin under Rule 403 is therefore **DENIED**.

In conclusion, Defendants have met their burden to establish that Mr. Martin's expert testimony on the reasonableness and necessity of attorneys' fees and expenses, the obligations and agency status of an insurance agent, the standards for proper claims settlement practices, and the parameters of bad faith is reliable. *See Equal Emp't Opportunity Comm'n v. S&B Indus., Inc.*, No. 3:15-CV-0641-D, 2017 WL 345641, at *7 (N.D. Tex. Jan. 24, 2017) (denying motion to exclude expert testimony based upon the expert's "allegedly limited and unreliable data, flawed methods, or faulty assumptions" because those "deficiencies ... can be attacked at trial"). Accordingly, Plaintiffs' motion to exclude the expert testimony of Mr. Martin is **DENIED**.

## IV. CONCLUSION

Plaintiffs' motion to strike Mr. Martin is **DENIED**.

**SO ORDERED** this 9th day of April, 2022.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE